*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0819**

Cheng Pao Vue, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed April 6, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-10-47285

F. Eric Lee, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the postconviction court's denial of his motion to withdraw an admission to a probation violation, arguing that (1) he was not accurately advised of the potential immigration consequences of admitting a probation violation, (2) his due-

process rights were violated at the probation revocation hearing, and (3) the district court abused its discretion in executing his stayed sentence. We affirm.

**FACTS**

On June 1, 2010, appellant was arrested in Hennepin County on suspicion of driving while impaired. Appellant was driving with a canceled license, inimical to public safety, with a no-alcohol restriction. Appellant has three previous convictions of driving while impaired dating from October 15, 2004, July 9, 2005, and March 20, 2007. A blood test later revealed that appellant's alcohol level was .16. The state charged appellant with one felony count of first-degree driving while impaired with three prior qualifying impaired-driving incidents within the last ten years. Appellant entered a plea of guilty on the felony impaired-driving charge and received a sentence of 36 months in the custody of the commissioner of corrections followed by a five-year conditional release period. Execution of the sentence was stayed for five years on a number of conditions, including that appellant refrain from alcohol or controlled-substance use and remain law-abiding. Appellant did not appeal this conviction.

On June 22, 2013, appellant was involved in a single-car crash in Anoka County. A preliminary breath test registered appellant's alcohol level at .291. The state charged appellant with driving while impaired. Appellant entered a guilty plea to this charge on January 31, 2014.

Following appellant's DWI arrest in Anoka County, the Hennepin County district court issued an arrest and detention order based on appellant's failure to remain law-abiding and refrain from alcohol use, as required under the terms of his probation arising

2

from his 2011 conviction. Appellant appeared before the district court in February 2014 for a probation violation hearing on his 2011 impaired-driving conviction. Appellant indicated that he understood the state's allegations and wanted to admit the violation. Appellant admitted that a condition of his 2011 sentence was that he could not be arrested on any new felony charges. Appellant further admitted that he entered a plea of guilty to the 2013 impaired-driving offense in Anoka County. The district court determined that appellant violated the condition that he remain law-abiding, revoked his probation, and executed his 36-month stayed sentence.

Appellant later moved to withdraw his admissions to the probation violation, arguing that he was not aware that he would be subject to a "harsh 36 months of imprisonment" or face immigration consequences. The state opposed the motion, arguing that appellant's claims lacked merit because he was informed of the direct consequences of a guilty plea, including the potential immigration consequences. The district court denied the petition. This appeal followed.

## D E C I S I O N

### I.

Appellant argues that his probation revocation should be reversed because his attorney was ineffective in failing to advise him of the potential immigration consequences of the probation revocation. We analyze an ineffective assistance of counsel claim under the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064-65 (1984). To prevail on his claim, appellant must demonstrate that his counsel's performance "fell

3

below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

We note that appellant did not raise this issue in the district court. Instead, appellant's motion at the district court level sought to withdraw his guilty plea on the ground that his plea was not intelligent because he was not advised of the immigration consequences of his guilty plea as required by *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010). The district court rejected this claim and noted that the signed plea petition included a paragraph advising appellant of the immigration consequences of his plea.

Appellant does not argue on appeal that this conclusion was in error, and our independent review of the record supports the district court's conclusion that appellant was represented by counsel at the time of the plea and was advised of the immigration consequences of his plea. And although appellant is correct that the sixth amendment to the constitution affords him the right to receive information about the potential immigration consequences of a guilty plea, *Padilla*, 130 S. Ct. at 1486, this right has been vindicated. On February 16, 2011, appellant entered a petition to enter a plea of guilty on the felony impaired-driving charge. The plea petition is heavily notated and includes a number of instances where either appellant or his attorney underlined or circled relevant sections of the petition. Paragraph 40 of the petition contains the following advisory:

> I understand that if I am not a citizen of the United States this plea of guilty may result in deportation, exclusion from admission to the United States, or denial of citizenship.

The words "citizen of the United States" are hand-circled on the petition.

4

Moreover, appellant was represented by counsel during the plea hearing. There is a presumption in Minnesota that a defendant is adequately advised of his rights when he has had a "full opportunity" to consult with an attorney before entering a guilty plea. *State v. Russell*, 306 Minn. 274, 275, 236 N.W.2d 612, 613 (1975). In its March 2014 order, the district court stated that there was "no basis" for finding appellant was not advised of the immigration consequences upon entering a guilty plea "[b]ecause the [appellant] was represented by counsel, both the plea negotiation and immigration consequences were stated in the plea petition, and it is presumed that defense counsel reviewed the petition with the [appellant] and the [appellant] understood its terms prior to entering his guilty plea." The record supports the conclusion that appellant was advised of the potential immigration consequences of a guilty plea in February 2011, at the time he entered his guilty plea.

Although the record of the probation violation hearing does not include any advisory concerning immigration consequences, appellant has not cited any authority, nor have we been able to find any authority, requiring an attorney to advise a client of immigration consequences resulting from revocation of a stayed sentence. Appellant misunderstands that it is the conviction that triggers immigration consequences, rather than revocation of probation and execution of a stayed sentence. *See, e.g.*, *Breeding v. Swenson*, 241 Minn. 232, 236, 62 N.W.2d 488, 491 (1954) (noting that when an executed sentence is revoked, "the resulting [incarceration] constitute[s] merely a continuation of the one sentence originally imposed"). Here, the immigration consequences of appellant's guilty plea attached at the conviction stage in 2011, rather than at the

5

revocation stage.  *See* 8 U.S.C. § 1227(a)(2)(A)(i)(II) (2006) ("Any alien who . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.").  Appellant has not shown that the deportation consequences he faced in 2013 were in any way different than the consequences confronting him in 2011.

Nevertheless, even if defense counsel was required to remind appellant of the immigration consequences of having his probation revoked and the stayed sentence executed, he cannot establish any prejudice because the record conclusively shows that he was made aware of the immigration consequences at the time he entered his guilty plea.  *See Strickland*, 466 U.S. at 687, 697, 104 S. Ct. at 2069 (noting that an appellate court need not reach the second prong of the test if the first prong is determinative).

## II.

Appellant argues that his due-process rights were violated at the probation revocation hearing because he did not intelligently waive a *Morrissey* hearing, he was not informed of his right to obtain and confront witnesses, and the sentencing portion of the hearing immediately followed the probation revocation admission.  Based on the recent Minnesota Supreme Court decision in *State v. Beaulieu*, ___ N.W.2d. ___, ___ 2015 WL 446702, at *4 (Minn. Feb. 4, 2015), we conclude that appellant did not have a constitutional right to be advised of the due-process rights expressed in *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 2604 (1972).

In *Morrissey*, the United States Supreme Court held that a parolee is entitled to certain due-process rights prior to a final decision on revocation including, at a minimum, written notice of the alleged parole violations, disclosure of the evidence against him, an

6

opportunity to be heard and present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses, a neutral decision-maker, and a written report of the decision. 408 U.S. at 489, 92 S. Ct. at 2604. A defendant is also entitled to *Morrissey* procedural due-process protections in a probation revocation setting. *Beaulieu*, 2015 WL 446702, at \*4 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756 (1973)); *see also Pearson v. State*, 308 Minn. 287, 289, 241 N.W.2d 490, 492 (1976).

In *Beaulieu*, our supreme court determined that although a probationer is entitled to procedural due process prior to revocation of probation, he "does not have a separate constitutional right 'to be advised' that he . . . has the procedural due process rights articulated in *Morrissey*." *Id*. Here, appellant received notice of the probation violation in the form of the arrest and detention order, and he was represented by counsel at the probation revocation stage. Appellant testified that he understood the allegations against him and was prepared to admit those violations:

> Q: You understand the allegations that [the prosecutor] is claiming?
>
> A: Yes.
>
> Q: And you understand that you would be admitting to these violations here today?
>
> A: Yes.
>
> Q: By admitting to the violations, you are waiving your right to what's called a *Morrissey* hearing where the state would have to prove through clear and convincing evidence that you violated a condition of your sentence. You understand that?
>
> A: Yes.

Q: But you wish to waive your right to that hearing, correct?

A: Yes.

Following this exchange, the district court found: "number one, that you know your rights to a hearing; number two, that you understand those rights; and number three, that knowing and understanding those rights you are voluntarily giving up your right to a hearing."

The district court determined that appellant intentionally violated the probationary condition to remain law-abiding by committing a new driving offense in June 2013 in Anoka County. The district court recognized that appellant had the "right to be heard" and afforded him the opportunity to address the court. Appellant stated that "I agree with everything that [the prosecutor is] saying. I did violate. I did mess up." Based on this record, we determine that appellant's due-process rights were satisfied.

Appellant also argues that the district court erred by executing the stayed sentence immediately following appellant's admission of the violation instead of holding a separate sentencing hearing. We are not persuaded. Rule 27.04 provides that if the district court finds a violation of the condition of probation or if the probationer admits a probation violation, the court may "impose and execute a sentence." Minn. R. Crim. P. 27.04, subd. 3(b)(iii). Minnesota law also authorizes a district court to revoke a stay and "order execution of the sentence previously imposed" when a defendant violates a condition of probation. Minn. Stat. § 609.14, subd. 3(2) (2012). We determine that the district court did not violate appellant's due-process rights by immediately executing his stayed sentence upon a finding that he violated his probationary conditions.

## III.

Appellant argues that the district court abused its discretion by "rush[ing] to find guilt" based on appellant's guilty plea to the Anoka County impaired-driving charge, in violation of *State v. Austin*, 295 N.W.2d 246 (Minn. 1980). We construe this as a challenge to the district court's decision to revoke appellant's probation. In *Austin*, the Minnesota Supreme Court adopted a three-step analysis for district courts to follow in determining whether to revoke probation. 295 N.W.2d at 250. The district court must "(1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *Id*. A district court has broad discretion to determine if there is sufficient evidence to revoke probation and we will reverse only upon a showing that the district court abused its discretion. *Id*. at 249-50. But whether the district court made adequate *Austin* findings is a question of law, which we review de novo. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

The district court made specific factual findings for each of the three *Austin* factors. Under the first prong, the district court stated that appellant violated the conditions to remain law-abiding and refrain from committing any new criminal offenses. Appellant acknowledged that a condition of the 2011 sentencing order was to remain law-abiding, and he admitted that he entered a plea of guilty to an impaired-driving offense in Anoka County. The district court found that the "conviction . . . to another DWI offense in Anoka County . . . violated the condition of remaining law-abiding."

9

Appellant contends that this finding was erroneous because the Anoka County district court judge had not accepted appellant's guilty plea as of June 2013. Rule 27.04 permits—but does not require—a district court to postpone a revocation hearing pending disposition of an outstanding criminal case. Minn. R. Crim. P. 27.04, subd. 2(4)(c) ("[T]he revocation hearing may be postponed pending disposition of the criminal case."); Minn. Stat. § 645.44, subd. 15 (2014) ("'May' is permissive."); *State v. Phabsomphou*, 530 N.W.2d 876, 878 (Minn. App. 1995) (holding defendant's due-process rights were not violated when district court scheduled probation revocation hearing before final disposition of new charges that formed the basis for the probation revocation), *review denied* (Minn. May 2, 1995). Appellant was arrested for felony impaired driving in June 2013 and signed a petition to enter a plea of guilty to that charge on January 31, 2014. Appellant admitted during the February 2014 probation revocation hearing that he had entered a plea of guilty to the Anoka County charge. The first *Austin* element is satisfied.

Under the second *Austin* factor, the district court found that appellant's violation was intentional. Appellant has not challenged this finding on appeal.

The third *Austin* factor requires the district court to find that the need for confinement outweighs the policies favoring probation. *Austin*, 295 N.W.2d at 250. Appellant argues that the third prong was not satisfied because the district court executed the sentence arbitrarily because "sending defendant to prison was just an easy thing to do." Imprisonment following revocation may be appropriate if the district court makes one of the following findings:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 251.

The district court determined that two of the three factors were satisfied. The district court found that driving behind the wheel with a .291 alcohol concentration and getting into an accident "is clearly a danger to public safety," and that "confinement is necessary to protect public safety." The district court further found that "being on probation for first-degree DWI, [and] picking up another first-degree DWI . . . unduly depreciate[s] the seriousness of the offense not to execute the sentence." The record supports the district court's findings. We conclude that the district court made adequate *Austin* findings sufficient to withstand this court's de novo review. *See Modtland*, 695 N.W.2d at 605.

**Affirmed.**